UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH PERKINS,

          Plaintiff,

v.

UNKNOWN BAILEY et al.,

          Defendants.

_____/

Case No. 1:20-cv-1029

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated at the Cook County Jail in Chicago, Illinois. The actions about which he complains, however, occurred while he was housed at the Berrien County Jail (BCJ) in Berrien County, Michigan. Plaintiff sues Berrien Springs Police Officer James Wyss

and the following BCJ officials:  Sheriff Unknown Bailey; Sergeants Holt and Will; Deputy Unknown Laretta; and an unknown administrative official (Unknown Party).

Plaintiff alleges that he was on parole on August 31, 2018, from an Illinois conviction.  On that date, he purchased a Chevrolet E600 High Top van for $5,000 down and $5,000 to be paid on a loan.  Some white female friends convinced him to make a road trip to Detroit and also convinced him to bring his expensive jewelry, clothes, tattoo equipment and money.  Plaintiff let one of the women drive because he was exhausted and she knew the way.

Plaintiff fell asleep.  He woke up at 9:00 p.m. to the vibration of his phone, signaling that he needed to report to his parole officer.  Although the van was running, Plaintiff heard a conversation between males and females, who appeared to be disappointed about finding so little in the van.  Plaintiff then noticed that he had been robbed.  He looked out the window and saw three men, one of whom had a black gun.  Plaintiff sneaked behind the wheel and fled in the vehicle, but he was lost.  The others chased him.  Plaintiff avoided the main streets and left the state, despite the fact that he had been victimized.  Subsequently, he was cornered and trapped by the others.  They demanded his key and title under threat of reporting him to the police for being in violation of his parole.  Plaintiff feared being caught out of town while on parole, and he saw the police arriving.  He therefore agreed to no police involvement.

When the police arrived, Defendant Wyss asked Plaintiff for his license and registration.  Plaintiff went to retrieve the documents from the vehicle.  During that time, the man with the gun left and the women were talking with the police officer.  Plaintiff attempted to tell Defendant Wyss what had happened, but Wyss told Plaintiff that the van was being impounded and that Plaintiff was being arrested for kidnapping, human trafficking, and assault and battery.  Defendant Wyss apparently looked at Plaintiff with disgust and then handcuffed him.  Plaintiff

begged and pleaded with Wyss during transport, but Wyss responded with an anecdote about a serial rapist who had lied to Wyss' face. Wyss also commented about Plaintiff, a black man, being with white women.

On September 2, 2018, Plaintiff was booked and subjected to a DNA test. Plaintiff then allegedly was placed in a dirty and overcrowed bullpen that had black mold on the walls. Plaintiff remained in the bullpen for 36 hours, where, he contends, he was deprived of sleep, a toothbrush, a shower, and soap. In addition, he alleges that he missed one or more meals.

On September 5, 2018, Plaintiff was moved to the gym area of the jail. Plaintiff alleges that the gym also was overcrowded and he had no bunk, only a bedroll on the floor. Plaintiff began talking with other detainees, who informed him that St. Joseph was the richest and most racist town and had a 99% conviction rate. The inmates also stated that they knew the women Plaintiff mentioned and knew that they were famous for robbing "Johns." (Compl., ECF No. 1, PageID.8.)

As a result of this information, and apparently near that same date, Plaintiff began to experience panic attacks, resulting in chest pain, breathing problems, nightmares, and cold sweats. When Plaintiff began to feel suicidal, he requested medical and mental health care. He did not see a nurse for three weeks, at which time she allegedly checked his vital signs. Plaintiff acknowledges that he eventually saw a psychiatric doctor and nurse on an unspecified date.

Plaintiff claims that he went to the bathroom on September 6, feeling like he was going to throw up. He noticed that the bathroom sink and toilet area were unsanitary, with trash on the floor and toothpaste on the sink and toilet. Plaintiff went to take a shower and noticed that hair and trash clogged the drain, the walls were dirty, and he saw a leach-like parasite. Plaintiff vomited and then asked for bleach to disinfect the tier. A detainee told Plaintiff that officers had

refused to allow it.  Plaintiff told the detainee to write a grievance, but no one knew what a grievance was.

Plaintiff asked multiple officers to bring cleaning supplies.  They agreed to do so, but none arrived.  When Defendant Laretta came, Plaintiff described the unsanitary conditions. She responded that what Plaintiff was saying was disgusting.  Defendant Laretta told Plaintiff to clean it up, and Plaintiff asked for gloves and supplies to do so.  Defendant Laretta denied his request, advising him that he had no rights in Berrien County and that he should "find out what happened to the guy in the shower[;] he was a wiseass to[o]."  (*Id.*, PageID.8.)  Plaintiff subsequently learned that a black man had been tasered while showering, resulting in his death. On approximately September 10, 2018, Plaintiff advised unspecified officers that he had contacted his family and that they were contacting the Department of Justice about the jail conditions.  At that point, officers brought bleach, disinfectant, a mop, and rubber gloves.

Plaintiff alleges that he started requesting grievance policies and library access.  He alleges that he wanted to find out about his case and charges and to appraise the court in his Illinois civil action.  Plaintiff was told that the BCJ has no law library and that the only library was at the courthouse.  Officers refused Plaintiff's requests to go to the courthouse.

Plaintiff complains that BCJ regularly ran out of food before the last two or three inmates had received a meal.  On two occasions, Plaintiff was the last person, so he missed two meals.

In addition, Plaintiff complains about a litany of other minor issues:  officers ignored complaints from the inmates who did not receive a meal; the television was shut off when no inmate paid the $10 fee; the mail was delivered when inmates were sleeping and was placed where other inmates could read a prisoner's mail; and Plaintiff's handmade grievances were

ignored.  Plaintiff also complains that, having borrowed a pen from another inmate (who purportedly had had no problem with Plaintiff using it), the entire unit was placed on lockdown until the pen was located.

Defendant Laretta issued Plaintiff a ticket on September 27, 2018, and he was placed in segregation without having received a hearing or other due process.  On October 2, 2018, Plaintiff was placed in the 2H dorm.  He complains that the pipes, bars, walls, showers, and tier camera all were dirty, molded, and unsanitary.  The alleged mold appeared to have been painted over.  Plaintiff also claims to have seen mold and food residue around the yellow plastic meal trays.  Plaintiff started addressing grievances to Defendant Sheriff Bailey.

An inmate provided Plaintiff with a copy of the inmate handbook, which referenced a grievance process.  Sometime between October 7 and 10, 2018, Plaintiff spoke with Defendant Holt about obtaining access to the grievance process, to the law library, and to a copy of the federal civil rights complaint form.  Defendant Holt apparently made an unpleasant remark in response. Plaintiff alleges that a trustee, Big Brown, warned Plaintiff to keep his head down, because the trustee had seen Plaintiff's grievances in the trash and officers did not like Plaintiff's complaints. Another detainee, Perkins, warned Plaintiff that he had overheard officers saying that Plaintiff "should become a lawyer instead of kidnapping women" and that "[t]hey hope [Plaintiff] get[s] the death sentence." (*Id.*, PageID.10.)  At some point, Defendant Sergeant Will came, and Plaintiff recited all of his complaints about the BCJ and stated that the BCJ was a lot different from Chicago. Will replied that Plaintiff was "a long way from Chicago." (*Id.*, PageID.11.)

Plaintiff contends that the criminal charges against him were dismissed on October 17, 2018, ostensibly because he proved he was innocent.  He contends that he was arrested falsely, racially profiled, robbed, kidnapped, housed under inhumane conditions, defamed, threatened,

DNA tested, and caused to lose his Illinois lawsuit.  He asserts that he now is reported in the police database as having been involved with human trafficking, stalking, and domestic battery, despite never having been charged with those offenses.  Plaintiff alleges that, since his arrest, he hears voices and requires medications for his anxiety and nightmares.

Plaintiff claims that he was subjected to retaliation for exercising his rights to complain about his conditions and that was deprived of a proper grievance system, both in violation of his First Amendment rights.  Plaintiff also claims that he was falsely arrested and that Defendant Wyss refused to consider Plaintiff's story, at least in part out of discriminatory intent.  In addition, Plaintiff asserts that Defendant Bailey, the official responsible for the operation of the facility, and and Defendants Laretta and Will were deliberately indifferent to the inhumane conditions at the BCJ, in violation of the Eighth Amendment.  He also alleges that his rights under the Eighth Amendment were denied both when Defendants Will and Laretta did not ensure that he saw the nurse for his physical condition and when the nurse provided no treatment.  Further, Plaintiff claims that he was denied his right to access the courts by Defendants Bailey, Holt, Will, and Unknown Party when they failed to provide him access to a law library and grievance procedures.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.   Lack of grievance procedure

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430

(6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

In addition, Petitioner's right to petition government is not violated by Defendants' failure to provide a grievance process.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff was improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) could not be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate

8

the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim based on the absence of a working grievance procedure.

## IV.    Supervisory liability

Beyond failing to adopt an effective grievance procedure, Plaintiff fails to make specific factual allegations against Defendant Bailey, other than to claim that Bailey failed supervise his subordinates or, possibly, to conduct an investigation in response to Plaintiff's grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act

based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Bailey engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Bailey.

## V.    Conditions of confinement

Plaintiff, a pretrial detainee, alleges that he was subjected to unconstitutional conditions of confinement while he was housed at the BCJ, due to the unhealthful conditions to which he was exposed. He also alleges that Defendants failed to ensure that he received adequate medical care for his panic attacks and nightmares, causing him to suffer these symptoms from approximately September 5 to October 17, 2018.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Although the Eighth Amendment's protections specifically apply to convicted prisoners, *see Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992), the courts have held that the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (stating that alleged

11

violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard).  However, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that evaluation of the use of excessive force on pretrial detainees is conducted under the Due Process Clause of the Fourteenth Amendment, which does not include the subjective prong of the Eighth Amendment deliberate-indifference standard.  Instead, the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable.  *Id.* at 398; *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*).

Since *Kingsley*, however, neither the Sixth Circuit nor the Supreme Court has clearly indicated whether the deliberate-indifference standard of the Eighth Amendment (requiring both objective and subjective components), which traditionally has been applied to prison detainees' conditions-of-confinement claims (such as denials of medical care or cell conditions), is affected by the holding in *Kingsley*.  In *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment.  *Id.* at 938 n.3; *see also Griffith v. Franklin Cnty.*, 975 F.3d 554 (6th Cir. 2020) (declining to reach the issue, finding that allegations did not meet the recklessness standard applied by some courts after *Kingsley* to medical claims for pretrial detainees) (note contrasting view by Clay, J., dissenting); *Martin v. Warren Cnty.*, 759 F. App'x 329, 337 n.4 (6th Cir. 2020) (declining to address the question) (citing *Richmond*, 885 F.3d at 937 n.3 (6th Cir. 2018) (observing that *Kingsley* calls into serious doubt whether a pretrial detainee must demonstrate the subjective element of the deliberate-indifference standard, but not reaching the issue)).

Nevertheless, the Sixth Circuit has, in a variety of unpublished decisions, continued to apply the deliberate-indifference standard to conditions-of-confinement claims by pretrial detainees, without considering *Kingsley*. *See McCain v. St. Clair Cnty.*, 750 F. App'x 399, 403 (6th Cir. 2018); *Medley v. Shelby Cnty.*, 742 F. App'x 958, 961 (6th Cir. 2018); *see also Cameron v. Bouchard*, 815 F. App'x 978, 984–85 (6th Cir. 2020) (declining to decide whether *Kingsley* controlled jail detainees' challenge to COVID-19 precautions and holding that, at a minimum, a violation of due process required more than simple negligence). Other circuits have split on the question. The Fifth, Eighth, and Eleventh Circuits have retained the deliberate-indifference standard when analyzing substantive due process claims that fall outside the excessive-force context. *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018) (retaining the deliberate indifference standard in medical cases); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017). In contrast, other courts of appeal have changed their standards in light of *Kingsley*. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Plaintiff's allegations do not demonstrate the existence of the first prong of the deliberate-indifference standard—that Plaintiff faced an objectively serious risk of harm. The Court therefore declines to reach the question whether, after *Kingsley*, the subjective prong of the deliberate-indifference standard applies to pretrial detainees.

### A. Unhealthful jail conditions

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement by being housed in the holding cell for three days without a shower or the ability to brush his teeth and by being deprived of an unspecified amount of food in that period. He also alleges that, after

13

being placed in the gym area on September 5, he had to sleep on the floor and had to use a bathroom and shower that were unsanitary because of clogged drains, dirty walls, mold, and the presence of a black worm or leach on one occasion.  Plaintiff alleges that was not able to clean the bathroom area until September 10, 2018.  Further, according to Plaintiff, he was placed in the 2H dorm on October 2, 2018, where he found the pipes, bars, walls, showers, and tier camera all were dirty, molded and unsanitary.  He apparently remained in the dorm until October 17, when his case was dismissed.  During the entire period of his detention, Plaintiff allegedly was denied a meal on two occasions.  Plaintiff also alleges that Defendants Laretta, Holt, and Will used insulting and demeaning language when speaking with Plaintiff.

Plaintiff's allegations concerning the various cell and bathroom facilities at the BCJ fall short of demonstrating the first prong of the Eighth Amendment claim.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The three-day delay in providing Plaintiff a toothbrush falls well short of an objectively serious deprivation.  The Sixth Circuit has recognized that the complete denial of a toothbrush or toothpaste for an extended period may constitute an objectively serious deprivation of basic hygiene needs.  *See Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health

14

problems did not constitute a mere temporary inconvenience and were sufficient to state an Eighth

Amendment claim).   However, a short-term denial of a toothbrush or toothpaste falls short of

constituting such a deprivation.   *See, e.g., Matthews v. Murphy,* No. 90-35458, 1992 WL 33902,

at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel,

toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days

did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL

2854266, at *4 (W.D. Mich. July 19, 2010) (denial of toothbrush and toothpaste for 34 days

constitutes a mere temporary inconvenience); *Robertson v. McRay,* No. 03-22823, 2006 WL

2136691, at *7 (S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items

and envelopes, stamps and paper more than half the time over a two-year period did not violate

the Eighth Amendment); *Fernandez v. Armstrong,* No. 3:02CV2252CFD, 2005 WL 733664, at

*5–6 (D. Conn. Mar. 30, 2005) (the denial of toothpaste, toothbrush, shampoo and soap for 16

days did not rise to the level of an Eighth Amendment violation where plaintiff did not allege any

physical effects or injuries); *Holder v. Merline,* No. Civ. A. 05-1024 RBK, 2005 WL 1522130, at

*6 (D.N.J. June 27, 2005) (three-week deprivation of a toothbrush and sneakers does not implicate

the Eighth Amendment where no physical effects resulted).   Moreover, here, unlike in *Flanory*,

Plaintiff alleges no harm or risk of harm arising from his three-day deprivation.   *See Flanory*, 604

F.3d at 254 (recognizing that the objective component of the Eighth Amendment test is typically

not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan,* 62 F.

App'x 636, 639 (7th Cir. 2003) (recognizing that a 49-day deprivation of soap, toothbrush and

toothpaste may impair basic levels of sanitation and hygiene only if prisoner health and safety is

jeopardized); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial

of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist

for bleeding and receding gums and tooth decay).   Under these authorities, Plaintiff's claim concerning the denial of a toothbrush for three days fails to meet the objective component of the Eighth Amendment.

In addition, Plaintiff's placement in an overcrowed bullpen and denial of a shower for three days falls well short of alleging a constitutional violation.  The constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *See Dellis*, 257 F.3d at 511 (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  The refusal to allow a shower for three days, as alleged in the instant case, constitutes a mere temporary

inconvenience.  *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (deprivation of single shower does not implicate Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

In addition, Plaintiff's exposure to some black mold on the walls and standing water in the bathroom and shower areas from September 5 to September 10, 2018, does not create a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.  Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment.  *Compare Board v. Farnham*, 394 F.3d 469, 486–87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that "some exposure to black mold is a risk society has chosen to tolerate") (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action

because Plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)).

Here, Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him health problems. Moreover, he was permitted to clean the allegedly dirty areas on September 10, only five days after he arrived in the gym area. As a consequence, Plaintiffs' allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health. *Ivey*, 832 F.2d at 954.

Further, Plaintiff's allegations about the conditions of the 2H dorm on October 2, 2018, also describe relatively minor and temporary inconveniences. *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "'the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.'") (emphasis in original; further internal quotations omitted) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (holding that both the length of exposure and the severity of the deprivation are important factors in evaluating the seriousness of the deprivation)). The cell conditions that Plaintiff portrays show that the cell may have been dirty, but not filthy, as described in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), where feces covered the walls and floors and were packed into the water faucet. Plaintiff alleges only that the walls had "painted-over" mold and that the "pipes, bars, walls, showers, and even the tier camera w[ere] dirty, molded and unsanitary . . . ." (Compl., ECF No. 1, PageID.10) At most, Plaintiff suffered the dirty conditions for approximately two weeks, until he was released on October 17, 2018. Indeed, Plaintiff does not even allege that he was denied cleaning materials during this period. As a consequence, Plaintiff's allegations

18

about the sanitary conditions in the 2H dorm fall well short of meeting the objective component of the Eighth Amendment standard.

To the extent that Plaintiff alleges that he missed two meals during the roughly six weeks he was housed at BCJ, Plaintiff's allegations fall well short of demonstrating an objectively serious deprivation.  The deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).  Plaintiff's allegation that he missed two meals in six weeks falls short of stating a claim under the objective prong of the deliberate-indifference standard.

Finally, Plaintiff alleges that Defendants Laretta, Holt, and Will used derogatory or demeaning language when speaking with Plaintiff.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional

dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Plaintiff's allegations about Defendants' derogatory remarks, therefore, fail to meet the objective prong of the deliberate-indifference test.

### B. Failure to provide medical care

Plaintiff alleges that Defendants failed to ensure that he received adequate medical care for his panic attacks and nightmares, which caused him to suffer symptoms of nausea, chest pain, breathing problems, nightmares, and cold sweats from approximately September 5, 2018, until October 17, 2018. Plaintiff alleges that he filed a request for medical care for his anxiety on September 5, 2018, but he did not see a nurse for three weeks, and he does not remember seeing a mental-health provider. According to Plaintiff, when he saw the nurse, she did nothing more than check his vital signs.

Plaintiff utterly fails to allege that any named Defendant refused to provide him medical care or interfered with his access to that care. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v.*

*Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Moreover, as previously discussed, the named Defendants may not be held liable for the unconstitutional conduct of other employees or medical providers under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.  Instead, a claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d 89.  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Plaintiff's allegations about the denial of medical care fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") against any of the named Defendants.  As a consequence, he fails to state a claim against them based on the alleged denial of medical care.

## VI.    Access to the courts

Plaintiff alleges that Defendants denied him access to the courts by not providing a law library or bringing him to the county courthouse library.  He complains that he could not access the library for his criminal proceedings and could not properly pursue a civil action that was pending in Illinois, which subsequently was dismissed.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's allegations concerning the dismissal of his Illinois civil action fall short of demonstrating actual injury. Plaintiff makes no allegations concerning the underlying cause of action—either the nature of the action or its substance and validity. As a result, he fails to allege facts showing that he suffered actual injury from being deprived of access to a library for six weeks. *Id.*

In addition, with respect to the Berrien County criminal charges that eventually were dismissed, Plaintiff does not dispute that he was represented by an attorney. A prisoner who is represented by counsel has no freestanding right to access a jail law library. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring

'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library); *Holt*, 702 F.2d at 640–01 (same). Because Plaintiff was represented by counsel in his criminal case, his right of access to the courts was adequately protected.

## VII.    Retaliation

Plaintiff suggests that Defendants Laretta and Holt retaliated against him when he exercised his right to seek redress through the use of the grievance process. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court assumes that Plaintiff's attempts to file grievances meet the first element of the retaliation standard. However, Plaintiff's allegations fall short of demonstrating that any Defendant took adverse action against him. The adverseness inquiry is an objective one and does

not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants'
conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual
deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  A specific
threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary
firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at
396 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to
change drug test results).  However, certain threats or deprivations are so *de minimis* that they do
not rise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F.
App'x at 542.

In his claim for relief, Plaintiff alleges that Defendants "threaten[ed] [him] with
death . . . ."  (Compl., ECF No. 1, PageID.12.)  However, despite this conclusory statement, which
occurred only in his claim for relief, Plaintiff's factual allegations about Defendants' comments
do not support his conclusion that he was threatened with death.  In his statement of facts, Plaintiff
alleges only that another prisoner told him that Defendants made disrespectful comments, such as,
"They hope I get the death sentence."  (Compl., ECF No. 1, PageID.10.)  In addition, Plaintiff
alleged that Defendant Laretta told him that he "ha[d] no rights in Berrien County and to find out
what happened to the guy in the shower, he was a wiseass to[o]."  (*Id.*, PageID.8.)

Such comments fall far short of credibly threatening death or injury.  Plaintiff
makes no allegation that, beyond making these limited comments, any Defendant took action
against him in response to his grievances.  To deem Defendants' comments adverse action would
"'trivialize the First Amendment.'"  *Thaddeus* 175 F.3d at 397 (quoting *Bart v. Telford*, 677 F.2d
622, 25 (7th Cir. 1982)).  As a consequence, Plaintiff fails to state a First Amendment retaliation
claim.

## VIII.   False arrest

Plaintiff claims that Defendant Wyss falsely arrested him.  Specifically, he alleges

that he was subjected to discrimination and false arrest, in violation of the Fourth, Fifth, Eighth,

and Fourteenth Amendments by the following:

> Defendant Wyss, James unlawfully detained and seized the victimized Plaintiff
> Keith Perkins after he was robbed and kidnapped then charged with high profile
> offenses because the reports was fabricated by two white woman.  The plaintiff
> tried to explain that he was the victim but the mali[ci]ous Defendant abused his
> authority and arrested plaintiff because of the race difference and the way he was
> dressed.  The misconduct described in this count was undertaken with mali[ci]ous,
> sadistic, willfulness, and reckless indifference to the rights of equal protection by
> law; due process of law; and false imprisonment including illegal search &
> seizures . . . .

(Compl., ECF No. 1, PageID.12.)

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment

where there is probable cause to believe that a criminal offense has been or is being committed."

*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964);

*Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020).  To prevail on a false arrest

claim brought under 42 U.S.C. § 1983, "a plaintiff [must] prove that the arresting officer lacked

probable cause to arrest the plaintiff."  *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677

(6th Cir. 2005); *see also Buchanan v. Metz*, 647 F. App'x 659, 664 (6th Cir. 2016).  "Whether

probable cause exists depends upon the reasonable conclusion to be drawn from the facts known

to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152.  "Generally, probable

cause exists when the police have 'reasonably trustworthy information . . . sufficient to warrant a

prudent man in believing that the petitioner had committed or was committing an offense.'"

*Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck*, 379 U.S. at 91).  To

prevail on his false arrest claim, plaintiff must present sufficient evidence that probable cause did

not exist.  *Id.*

"'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). Plaintiff fails to allege the absence of probable cause.  Indeed, he admits that the two women told Defendant Wyss a false story about having been kidnapped, trafficked, and subjected to assault and battery, and he admits that the women knew he was on parole.  Defendant Wyss only arrested Plaintiff after having obtained statements from the women.  Although Plaintiff alleges that he did not commit the offenses and that the witnesses were lying, he at no time argues that the witness statements did not provide probable cause for his arrest.  Plaintiff simply asserts that Defendant Wyss should have listened to him and should not have believed the women.

Probable cause can be supported by false accusations from a third party, as long as the one making the probable cause determination takes into account the totality of the circumstances and is not aware that the accusations are false. *See Franklin v. Miami Univ.*, 214 F. App'x 509, 511–13 (6th Cir. 2007) (an eyewitness statement is sufficient to establish probable cause unless, "at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying . . . .") (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)). Thus, even if the alleged victims falsely accused Plaintiff, that does not necessarily mean that Defendant Wyss lacked probable cause to arrest Plaintiff.  *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (a victim's statement that she had been abused provides sufficient probable cause) (citing *Klein v. Long*, 275 F.3d 544, 551–52 (6th Cir. 2001) (holding that "a victim's accusation that she had been sexually assaulted by the plaintiff, standing alone, [can be] sufficient to establish probable cause" and explaining that officers need not interview an alleged offender where a victim claims that she was abused if such an interview would, at most, produce

an exculpatory denial of wrongdoing)).  Because the witness statements, as described in Plaintiff's complaint, provided ample probable cause for Plaintiff's arrest, Plaintiff fails to state a false-arrest claim against Defendant Wyss.

Plaintiff next makes a conclusory allegation that, notwithstanding the existence of probable cause, his arrest violated the Equal Protection Clause, because Defendant Wyss believed the women—rather than Plaintiff—because of racial bias.  Plaintiff's claim lacks merit.

First, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Second, "probable cause provides a complete defense to a claim of false arrest."  *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014).  The Supreme Court repeatedly has recognized that, where an arrest is objectively justified by probable cause, a court may not look to the underlying motives of the arresting officer.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011) (rejecting argument for consideration of racial profiling) (citing *Devenpeck*, 543 U.S. at 593–94) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."), and *Whren v. United States*, 517 U.S. 806, 811 (1996) (stating that ulterior motives cannot invalidate police conduct that is justifiable on the basis of probable cause)).

The charges against Plaintiff apparently were dismissed, and his arrest and detainment therefore appear to him to be unjustified.  However, probable cause supported his arrest, and the subsequent dismissal or acquittal on an offense does not vitiate the existence of probable cause at the time of the arrest.  *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).  As the Supreme Court has recognized,

> The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

*Baker v. McCollan*, 443 U.S. 137, 145–46 (1979).  Because Plaintiff's allegations demonstrate that Defendant Wyss had probable cause to arrest Plaintiff, Plaintiff's false-arrest claim will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 9, 2021                                    /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge